United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN CHRISTINE KENNY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 17-cv-02245-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17 & 21 |

Plaintiff Gretchen Christine Kenny seeks social security benefits for a combination of mental and physical impairments, including: status post lumbar fusion; status post numerous ankle surgeries; status post right clavicle surgery; complex regional pain syndrome; and mental health issues. (Administrative Record ("AR") 12.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this action for judicial review of the final decision by the Commissioner of Social Security denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment. (Dkt. Nos. 17 & 21.) Because the Administrative Law Judge ("ALJ") improperly weighed the medical opinion evidence, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be

severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL HISTORY

In 2013, Plaintiff first filed for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, alleging disability beginning on August 18, 2012. (AR 148.) Plaintiff alleges numerous physical and mental conditions, including spinal injuries to her cervical and lumbar spine; thyroid problems; auto immune disease; several gastrointestinal issues; depression; severe fatigue; and severe weight gain. (AR 160.) Plaintiff's initial application and request for reconsideration were denied. (AR 79-83, 88-94.) Plaintiff requested a hearing before an ALJ. (AR 95-96.) On July 8, 2015, ALJ Maxine R. Benmour conducted a hearing. (AR 23-51.) In a written decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations and, therefore, was not entitled to SSDI benefits. (AR 10-17.) Plaintiff commenced this action for judicial review on April 23, 2017 pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). (Dkt. No. 1.)

## ADMINISTRATIVE RECORD

Plaintiff was born on November 5, 1975. (AR 52.) She resides in Petaluma, California. (*Id.*) Plaintiff alleges that she has been unable to work since August 18, 2012 because of numerous injuries and depression. (*Id.*)

**I. Medical Evidence**

    **A. Medical History: Treatment Records**

2

Plaintiff's history of mental health problems dates back to at least 2011. (AR 428.) She suffers from chronic pain, depressed mood, despair, hopelessness, fatigue, and insomnia. (*Id.*) Although Plaintiff also applied for disability based on back and ankle injuries, both have resolved as a result of surgery during the pendency of her social security action. (AR 33, 437, 949-950, 1048, 1059-1061.) However, in 2015, while her application was pending, Plaintiff was thrown from a horse and broke her clavicle. (AR 1236.) She has had difficulty moving her right arm since then, despite undergoing surgery. (AR 1227, 1236.) Plaintiff takes numerous medications for pain and to help her sleep. (AR 34-37, 438.)

### B. Medical Evaluations

#### 1. Treating Psychiatrist James McQuade, M.D.

On April 2, 2014, Dr. James McQuade completed a lumbar spine residual functional capacity questionnaire, assessing Plaintiff's mental and physical limitations. (AR 428-432.) Plaintiff has seen Dr. McQuade monthly since June 2011. (AR 428.) Dr. McQuade diagnosed Plaintiff with depression; chronic pain; a neck fracture in her C-5, C-6, and L5 vertebrae; and instability in her L-4 to S-1 vertebrae. (*Id.*) Dr. McQuade reported that Plaintiff experienced numerous symptoms, including sadness; chronic pain; insomnia; despair; hopelessness; and intermittent weakness and numbness in her right arm, especially after use. (*Id.*) He characterized Plaintiff's pain in her C-5 to C-6 vertebrae as "persistent pain" that worsens when she uses her right arm, and noted that this pain is severe enough to limit Plaintiff's basic functions such as holding a telephone, washing her hair, and doing dishes. (*Id.*) Dr. McQuade characterized the pain in Plaintiff's L-5 vertebrae as sciatica and radiating pain throughout her right leg. (*Id.*) He noted that this pain limits Plaintiff's ability to walk or stand. (*Id.*) Dr. McQuade noted that Plaintiff has an abnormal gait, impaired sleep, and has gained weight as a result of her physical limitations. (AR 429.) Plaintiff's symptoms and physical limitations began in March 2011 after she fell out of her truck and broke her back. (AR 431.)

Dr. McQuade reported that emotional factors also contribute to the severity of Plaintiff's symptoms and functional limitations, and that her impairments are reasonably consistent with the symptoms and functional limitations he reported. (AR 429.) Plaintiff's pain and other symptoms

are frequently severe enough that they interfere with the attention and concentration she needs to perform even simple work-related tasks. (*Id.*) In addition, Plaintiff experiences sedation, fatigue, and moderate cognitive disturbance as a result of the medication she takes to manage her symptoms. (*Id.*)

The questionnaire also asked Dr. McQuade to assess Plaintiff's functional limitations were she to be placed in a competitive work situation. (*Id.*) He indicated that Plaintiff can only walk between zero and one city blocks without resting, and she experiences pain with every step she takes. (*Id.*) He also indicated that Plaintiff can sit for only five to ten minutes at a time before needing to get up, and that she can only stand for zero to five minutes at a time before needing to change position. (AR 430.) Dr. McQuade estimated that Plaintiff could sit, stand, or walk for less than two hours total out of an eight-hour work day, and that she needed to walk every five to ten minutes for periods of approximately five minutes. (*Id.*) He also reported that Plaintiff needed a job that permits shifting positions at will from sitting, standing, or walking, and that she needed the option to take unscheduled breaks from work multiple times per hour. (*Id.*) In addition, Dr. McQuade reported that Plaintiff can carry less than ten pounds frequently, ten pounds occasionally, twenty pounds rarely, and fifty pounds never. (AR 431.) Plaintiff has significant limitations with reaching, handling, or fingering. (*Id.*) Specifically, Plaintiff could only use her hands, fingers, or arms for the following activities in an eight-hour work day: (1) grasping, twisting, turning objects for half an hour with her right hand, and three hours with her left hand; (2) using her right fingers for fine manipulations for two hours, and her left fingers for four hours; (3) reaching her left arm overhead for two hours, but reaching her left arm overhead not at all. (*Id.*) Dr. McQuade reported that Plaintiff's symptoms were likely to produce "good days" and "bad days" and she was likely to be absent from work three or more days per month. (*Id.*)

Dr. McQuade also completed a manipulative limitations residual functional capacity questionnaire on April 2, 2014. (AR 433-434.) He noted that Plaintiff experienced paresthesia and reduced grip strength that affected her wrists, hands, or fingers. (AR 433.) Specifically, Plaintiff experienced numbness and tingling whenever she moved her right arm. (*Id.*)

**2. Examining Psychologist Alex Kettner, Psy.D. Licensed Clinical Psychologist**

4

Dr. Kettner examined Plaintiff and completed a mental status disability evaluation on November 14, 2013. (AR 379-382.) Based on his examination, Dr. Kettner diagnosed Plaintiff with Depressive Disorder Not Otherwise Specified, Mild. (AR 381.) He noted that Plaintiff appeared mildly depressed, and speculated that this was likely due to her medical condition. (*Id.*) Dr. Kettner observed that Plaintiff did not exhibit any major impairment in her cognitive functions, but that she would benefit from ongoing mental health counseling and continuing to take her psychiatric medications. (*Id.*) He also reported that Plaintiff's depression would cause her no difficulty understanding, remembering, and carrying out simple instructions, and only mild difficulty remembering and carrying out detailed instructions. (*Id.*) Dr. Kettner also reported that Plaintiff's depression would cause her only mild difficulty dealing with the public and interacting with co-workers and supervisors. (*Id.*) Furthermore, Plaintiff would have mild difficulty maintaining attention and concentration for two-hour increments because of her depression. (*Id.*) Dr. Kettner predicted that Plaintiff's mental health would likely improve over the following year, as long as her medical conditions also improved. (*Id.*)

### 3. Non-Examining State Agency Psychologists and Psychiatrists

Several non-examining state agency psychologists and psychiatrists reviewed Dr. Kettner's report and concluded that Plaintiff suffered from mild depression, but that her condition was not severe enough to prevent her from performing the type of work she previously performed as an office manager. (AR 59-63, 73-78.)

### C. Third Party Function Report

Denis Kenny, Plaintiff's husband, completed a third party function report describing Plaintiff's limitations. (AR 187-195.) Mr. Kenny reported that Plaintiff can prepare easy meals, do chores, drive, shop for groceries and household items, and manage her own money, but that these tasks take Plaintiff longer than they used to and she complains of pain while she does them. (AR 188-190.) He also reported that Plaintiff has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks. (AR 192.)

## II. ALJ Hearing

On July 8, 2015, Plaintiff appeared with her representative at her scheduled hearing before

ALJ Maxine R. Benmour in San Rafael, California. (AR 23.) Plaintiff and Vocational Expert ("VE") James Graham both testified at the hearing. (*Id.*)

### A. Plaintiff's Testimony

Plaintiff testified that she last worked in August 2012. (AR 28.) She was a real estate office manager from 2003 until 2012. (*Id.*) Prior to that, she was an office manager for a wireless phone company from 1998 to 2003. (*Id.*) Plaintiff testified that she had to stop working because stress from her job caused her to experience physical symptoms, including dizziness, lightheadedness, vertigo, lethargy, tension in her neck, and inability to use her arm. (AR 28-29.)

Plaintiff's problems began in 2001 when she fell from a horse and injured her lumbar spine. (AR 30.) She had a spinal fusion of L4 to S1 in April 2014. (AR 31.) The surgery helped her back pain, but she still experiences intermittent pain. (*Id.*) Plaintiff has also had surgery on her left ankle nine times. (AR 32.) Her first ankle surgery was at age 17, and her most recent surgery was in December 2014. (*Id.*) Plaintiff has nerve damage in her left leg as a result of her most recent ankle surgery. (AR 33.) She does not have trouble walking or putting weight on her left ankle. (*Id.*)

Plaintiff broke her clavicle in January 2015 in a horseback riding accident. (AR 31.) She has plates in her clavicle that cause constant burning pain, and interfere with her ability to move her arm. (AR 34.) Plaintiff testified that she takes pain medication for her back, ankle, and clavicle pain, including Kadian, a slow release pain medication, twice a day; Lyrica three times a day for nerve pain; Vicodin, as needed; and Oxycodone, as needed. (AR 31, 34-35.) She also takes sleeping medications, including Lunesta, Trazadone, and Valium. (AR 35.) Plaintiff's primary pain doctor is Dr. James McQuade, who she sees monthly. (AR 36.) Dr. McQuade prescribes Plaintiff's medications, and he has not suggested anything she can do to help her pain other than taking medication. (*Id.*)

Plaintiff experiences stiffness in her neck and tension in her back when sitting for long periods of time, and has to change positions approximately every twenty minutes. (AR 38.) She can walk for about fifteen minutes without stopping. (*Id.*) Standing in place is also painful. (AR 38-39.) She can lift up to 20 or 25 pounds with her left arm, but only five pounds with her right

6

arm. (AR 39.) Plaintiff is able to perform personal care, drive, and do some household chores such as laundry, grocery shopping, sweeping, and cleaning the bathroom. (AR 40-41, 43.) She is able to ride horses about twice a week, but has to have a friend help her saddle her horse. (AR 41.) She spends between four and six hours each day lying on the couch. (AR 42.)

**B. Vocational Expert's Testimony**

At the ALJ's request, VE James Graham, who reviewed Plaintiff's file and was present for Plaintiff's testimony, testified regarding Plaintiff's ability to perform her past work. The VE classified Plaintiff's past relevant work as office manager (DOT 169.167-034), a sedentary job with an SVP of 7. (AR 48.)

The ALJ posed two hypotheticals to the VE to determine whether there were jobs existing in significant numbers in the national economy that Plaintiff could perform given her impairments. (*Id.*) The ALJ's first hypothetical considered an individual with Plaintiff's age, education, and background, along with the following limitations: lifting and carrying 20 pounds occasionally and ten frequently; sitting six hours in an eight hour day, standing and walking; occasional climbing, balancing, stooping, kneeling, and crouching; occasional reaching overhead with the right upper extremity; must avoid concentrated exposure to hazards; and limited to simple, repetitive tasks. (*Id.*) The VE responded that such an individual could not perform Plaintiff's past work as an office manager. (*Id.*) The VE found that there were jobs in the national and local economy that the hypothetical individual could perform and named three such jobs for the ALJ: (1) addressing clerk (DOT 209.687.010), a sedentary position with an SVP of 2; (2) final assembler (DOT 713.687-018), a sedentary position with an SVP of 2; and (3) laminator I (DOT 690.685-258), a sedentary position with an SVP of 2. (AR 48-49.)

The ALJ's second hypothetical was an individual with the same limitations as in the first hypothetical, but who would also be absent from work more than three times each month. (AR 49.) The ALJ asked whether there were any jobs in the local or national economy that that hypothetical individual could perform. (*Id.*) The VE responded that, with this additional limitation, there were no jobs the hypothetical individual could perform. (*Id.*)

Plaintiff's counsel then asked the VE whether an individual with limited ability to use their

hands and arms on a regular basis could perform the unskilled jobs the VE proposed in response to the ALJ's first hypothetical. (AR 50.) The VE responded that an individual with these limitations could not perform the jobs he described. (*Id.*)

**III. ALJ's Findings**

In an October 23, 2015 written decision, the ALJ found Plaintiff not disabled under sections 216(i) and 223(d) of the Social Security Act, taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 10-17); *see* 20 C. F. R. § 404.1520(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 18, 2012, prior to the application date of June 13, 2013. (AR 12.)

At step two, the ALJ found that Plaintiff had four severe impairments: (1) status post lumbar fusion; (2) status post numerous ankle surgeries; (3) status post right clavicle surgery; and (4) complex regional pain syndrome. (*Id.*)

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1. (*Id.*) Specifically, the ALJ considered the criteria of listing 1.03, reconstructive surgery or surgical arthrodesis of a major weight-bearing joint. (AR 13.) The ALJ also considered the criteria of listing 1.04, disorders of the spine. (*Id.*) The ALJ stated that the medical record did not contain all of the required evidence to meet either listing, but did not provide any further details or explanation. (*Id.*)

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she could lift and/or carry 20 pounds occasionally, ten pounds frequently; sit six hours in an eight-hour workday; stand and/or walk two hours in an eight-hour work day; occasionally climb, balance, stoop, kneel, crouch and crawl; occasionally reach overhead with the right upper extremity. (*Id.*) The ALJ found that Plaintiff must avoid concentrated exposure to hazards and was limited to simple, repetitive tasks. (*Id.*) In considering Plaintiff's symptoms and the objective medical evidence of these symptoms, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the

1 alleged symptoms. (AR 13, 15.) However, Plaintiff's testimony regarding the intensity, persistence, and limiting effects of these symptoms was not entirely credible. (AR 15.) The ALJ explained that Plaintiff's daily activities, including personal care cooking, laundry, grocery shopping, sweeping, cleaning the bathroom, driving, and horseback riding twice a week, are inconsistent with a totally disabling impairment. (*Id.*)

Regarding Plaintiff's physical limitations, the ALJ gave some weight to the opinions of the Non-Examining State Agency Psychologists who reviewed Examining Psychologist Dr. Alex Kettner's report, and concluded that Plaintiff could perform light work. (AR 15-16.) However, the ALJ found it more appropriate to limit Plaintiff's standing and walking in light of her ankle injury. (AR 15.) The ALJ gave limited weight to the medical source statement from Treating Psychiatrist Dr. James McQuade because it was completed at the time of Plaintiff's lumbar spine surgery. (*Id.*) The ALJ also gave limited weight to Dr. McQuade's opinion regarding Plaintiff's physical limitations because he is a psychiatrist, and indicated that he does not do physical examinations. (*Id.*)

With respect to Plaintiff's mental limitations, the ALJ noted that a consultative psychological examiner physician diagnosed Plaintiff with depressive disorder NOS, with a GAF of 62, but the ALJ concluded that Plaintiff's mental impairment was nonsevere because the examiner's findings were only mild and there was insufficient evidence of work-related limitations. (AR 16.)

At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work because the demands of office manager work exceeded Plaintiff's RFC. (*Id.*)

At the fifth step, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including addressing clerk, final assembler, and laminator I. (AR 16-17.)

**DISCUSSION**

Plaintiff contends that the ALJ committed two errors: (1) the ALJ failed to properly evaluate the opinions of Dr. McQuade; and (2) the ALJ failed to comply with the regulatory requirement of completing a psychiatric review technique form.

9

**I. The ALJ's Consideration of Medical Opinion Evidence**

    **A. Legal Standard**

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A medical expert's opinion is weighed the same as a nonexamining physician's. *See* SSR 96-6P, 1996 WL 374180, *2 (1996). "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830-31.

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986), *superseded on other grounds by statute*, 42 U.S.C. § 423(d)(5)(A), *as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990). Ultimately, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted). In weighing medical opinions, the ALJ may consider (1) the examining relationship, (2) the treatment relationship, (3)

the supportability, (4) the consistency, (5) the specialization, and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c)(5). In conducting his review, the ALJ "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 388 F.3d 1144, 1159 (9th Cir. 2012) (internal citations omitted). "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's[,]" "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at 422.

### B. Analysis

Plaintiff only challenges one aspect of the ALJ's treatment of the medical evidence—the weight given to the opinion of her treating psychiatrist, Dr. McQuade, regarding her mental health impairment. Because Dr. McQuade's opinion was contradicted by examining psychologist Dr. Kettner, the ALJ was required to provide "specific and legitimate reasons supported by substantial evidence" for rejecting Dr. McQuade's opinion. *See Lester*, 81 F.3d at 830-31. While the ALJ discussed Dr. McQuade's assessment of Plaintiff's physical limitations at length, the ALJ failed to address his assessment of Plaintiff's mental limitations.

The ALJ concluded that Plaintiff's mental impairment was nonsevere because an examining psychologist concluded that she had depressive disorder NOS, but it was mild and no work-related limitations were recommended. (AR 16.) However, Dr. McQuade—Plaintiff's treating psychiatrist since June 2011—directly contradicts this conclusion. Dr. McQuade diagnosed Plaintiff with depression with symptoms of sadness, chronic pain, insomnia, despair, and hopelessness. (AR 428.) Dr. McQuade noted that emotional factors contributed to the severity of Plaintiff's symptoms and her functional limitations, and that her pain and other symptoms were frequently severe enough that they interfered with the attention and concentration she needs to perform even simple work-related tasks. (AR 429.) According to Dr. McQuade, Plaintiff experienced sedation, fatigue, and moderate cognitive disturbance as a result of the medication she takes to manage her symptoms. (*Id.*) In addition, Plaintiff's symptoms were likely to produce "good days" and "bad days" and that she would likely be absent from work three or more days per month as a result of her symptoms. (AR 431.) The ALJ failed to discuss any of

11

these findings by Dr. McQuade and the ALJ failed to provide any reasons—let alone specific and legitimate reasons supported by substantial evidence—for doing so. "An ALJ cannot avoid the obligation to set forth specific, legitimate reasons for rejecting a treating physician's opinions 'simply by not mentioning the treating physician's opinion and making findings contrary to it.'" *Pruett v. Colvin*, 85 F. Supp. 3d 1152, 1162 (N.D. Cal. 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1038 n. 10 (9th Cir. 2007)). The ALJ's failure to provide specific and legitimate reasons for rejecting Dr. McQuade's report was clear error. *See Garrison*, 759 F.3d at 1012-13; *see also Pruett*, 85 F. Supp. 3d at 1162 (finding that the ALJ's determination that the plaintiff did not require a cane to walk was erroneous where the ALJ's decision never mentioned the treating physician's assessment of the plaintiff's need for a cane, and instead favored an examining physician's opinion).

The ALJ also erred with respect to the weight given to Dr. McQuade's findings regarding Plaintiff's physical limitations. Although Plaintiff does not clearly challenge the ALJ's findings in this regard, the Commissioner's cross-motion and opposition to Plaintiff's arguments regarding the ALJ's treatment of Dr. McQuade focus exclusively on the ALJ's rejection of Dr. McQuade's physical limitation findings. The Court thus briefly discusses the ALJ's findings in this regard. The ALJ gave "limited weight" to Dr. McQuade's assessment of Plaintiff's physical limitations for four reasons: (1) Dr. McQuade's evaluation was completed at the time of Plaintiff's lumbar spine surgery; (2) Dr. McQuade stated that, as a psychiatrist, he does not perform physical examinations; (3) there was "nothing in the record to indicate any manipulative limitations" prior to Dr. McQuade completing his the lumbar spine RFC questionnaire; and (4) Dr. McQuade did not discuss Plaintiff's ankle pain as an issue. (AR 15.)

First, it is unclear what the ALJ was referring to when she noted that Dr. McQuade's evaluation was completed at the time of Plaintiff's lumbar spine surgery. Plaintiff suggests that the ALJ may have meant that Dr. McQuade's assessment of Plaintiff's limitations only applied to a brief period prior to Plaintiff's lumbar spine surgery, and was therefore insufficient to prove that Plaintiff had been disabled for at least 12 months. (Dkt. No. 17 at 7:8-11.) However, there is ample evidence in the record of Plaintiff's spinal injuries and the resulting limitations, and this

evidence goes back well over 12 months prior to Dr. McQuade's evaluation. (AR 243, 252, 254, 351.) Therefore, even if this was the ALJ's intended meaning, it is not a specific and legitimate reason for rejecting Dr. McQuade's testimony.

Second, that Dr. McQuade is a psychiatrist does not prevent him from giving credible opinions as to Plaintiff's physical limitations. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (finding that, as a medical doctor, the plaintiff's primary care physician was qualified to evaluate the plaintiff's mental limitations, even though the doctor was not a psychiatrist). Dr. McQuade is a licensed medical doctor who had been treating Plaintiff monthly since June 2011. (AR 428.) Though his practice area is psychiatry, Dr. McQuade prescribes Plaintiff's pain medications, and as such is very familiar with the physical limitations that are responsible for Plaintiff's pain. (AR 36.) Therefore, the ALJ erred by discrediting Dr. McQuade's assessment merely because he is a psychiatrist.

Third, there are several items in the record that indicate that manipulative limitations existed prior to Dr. McQuade's 2014 evaluation. For example, Plaintiff received treatment for back pain from Dr. Sibel Deviren in September 2013. (AR 243.) Dr. Deviren also administered epidural injections to Plaintiff's cervical spine in August 2013 because of Plaintiff's spinal pain and right arm pain. (AR 351.) In November 2012, Dr. Rajesh Ranadive reported that Plaintiff suffered from spinal pain that caused "severe limitations in range of motion in all planes." (AR 254.) Following an MRI in December of that year, Dr. Ranadive diagnosed Plaintiff with chronic musculoligamentous strain/sprain of both the cervicothroasic spine and the lumbosacral spine, and indicated that Plaintiff's symptoms had been present since at least 2004. (AR 252.) These instances of treatment for Plaintiff's back pain all took place prior to Dr. McQuade's April 2, 2014 assessment. Because Dr. McQuade's assessment of Plaintiff's physical limitations was consistent with the record, and Dr. McQuade was Plaintiff's treating physician, the ALJ was required to provide specific and legitimate reasons to reject his opinion. *See Lester*, 81 F.3d at 830-31. The ALJ failed to meet this standard.

Finally, that Dr. McQuade did not address Plaintiff's ankle pain is not a legitimate reason for rejecting his evaluation of Plaintiff's physical limitations. Dr. McQuade did address Plaintiff's

numerous other physical limitations, including her back injuries and the pain that resulted from these injuries. (AR 428-434.) The ALJ did not explain why Dr. McQuade not addressing Plaintiff's ankle pain is a valid reason for rejecting his evaluation of Plaintiff's other physical limitations. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (finding that it was unreasonable to expect the plaintiff's doctor to address ailments unrelated to those about which the plaintiff was complaining at the time of his visit to the doctor). Therefore, this is not a specific and legitimate reason for rejecting Dr. McQuade's opinion of Plaintiff's physical limitations

The Commissioner also argues that Plaintiff's subjective complaints of pain are not credible, emphasizing that the ALJ "noted a lack of objective evidence to support Plaintiff's allegations of disabling limitations." (Dkt. No. 21 at 6:7-8.) However, as just explained, Dr. Plaintiff's medical records are consistent with her allegations of disabling pain, and the ALJ did not properly evaluate Dr. McQuade's report. In addition, Dr. McQuade's assessment of Plaintiff's physical limitations is consistent with the medical evidence in the record. (*See, e.g.* AR 243, 252, 254, 351.) Dr. McQuade also indicated that Plaintiff is not a malingerer, which lends credence to her subjective complaints of disabling pain. (AR 428.) Therefore, Dr. McQuade's report supports Plaintiff's allegations. *See Knorr v. Berryhill*, 254 F. Supp. 3d 1196, 1216–17 (C.D. Cal. 2017) (finding that the objective medical evidence supported the plaintiff's allegations of disabling pain where the treating physician's records indicated he believed the plaintiff's allegations and there was no indication that the plaintiff was a malingerer).

The ALJ's error in completely ignoring Dr. McQuade's testimony regarding Plaintiff's mental limitations and assigning limited weight to his testimony regarding Plaintiff's physical limitations is not harmless because the error is neither nonprejudicial nor inconsequential to the ALJ's ultimate disability determination. *See Molina* 674 F. 3d at 1122 (holding that an error is harmless if it is "inconsequential to the ultimate nondisability determination"). If the ALJ had accepted Dr. McQuade's assessment of Plaintiff's mental and physical limitations, it seems likely that this would have changed the RFC and thus the ultimate disability determination. Accordingly, the Court cannot conclude that the ALJ's error was harmless.

//

14

**II. Whether the ALJ Failed to Complete a Psychiatric Review Technique Form**

Plaintiff also contends that the ALJ erred by not adhering to the regulatory requirement of completing a psychiatric review technique form and appending this to the ALJ's decision. The Court declines to reach this issue because the ALJ's errors with respect to the weighing of the medical evidence require reversal.

**III. Remand**

It is unclear whether Plaintiff asks the Court to remand for immediate benefits under the credit as true test, or to remand for further proceedings. Plaintiff's Motion for Summary Judgment asks the Court to remand for benefits under the credit as true test (Dkt. No. 17 at 9:18-20), but later the same motion asks the Court to reverse and remand for further proceedings "to allow the ALJ to correct the errors." (*Id.* at 12:10-11.) Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, *id.*, and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

In this case, there are outstanding issues that must be resolved before a final determination

can be made. The ALJ must reassess the medical opinion evidence as a whole, explain the weight afforded to each opinion, and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting some doctors' opinions over others.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 17 and 21.

**IT IS SO ORDERED.**

Dated: July 20, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge